## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| KAWANA BROOKINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.            2:17-cv-172 |
| LAWRENCE COUNTY SCHOOL | ) | |
| DISTRICT; and TAMMY | ) | |
| FAIRBURN, in both her official and | ) | JURY TRIAL DEMANDED |
| individual capacity | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, Kawana Brookins, by and through counsel, and files this, her Response to Defendants' Motion for Summary Judgment and would show unto the Honorable Court as follows:

### INTRODUCTION

Defendants failed to show that it is entitled to judgment as a matter of law in accordance with Rule 56. Defendants failed to negate any of the essential elements upon which Plaintiff, Kawana Brookins, has the burden of proof at trial. Despite Defendants' approach, Plaintiff's claims should proceed to trial based on the applicable standard. As this Court will see, Plaintiff can clearly show that triable issues exists; thus Defendants' motion should be denied.

RELEVANT FACTS

The Background and Spark Plug

Throughout Plaintiff's tenure with the District, African-American members of the community and African American teachers both complained to the Lawrence County School Board ("LCSD"), Principal Darryl Turner, and to Fairburn about the racial discrimination that persists against African-American teachers' as well as the racial discrimination against African-American students in LCSD without any steps taken to prevent this conduct. (Doc. 46-Ex 1)[1]. Said complaints were also made to the Lawrence County School Board, Principal Darryl Turner, and to Fairburn about the repercussions that African Americans suffered after complaining about these inequities.  Id.  Eventually, Plaintiff also provided such notice.  (Ex. 1).  Despite these complaints, Fairburn and LCSD currently refuse to take any steps to address these concerns or even abide by a consent decree ordered by the United States District Court for the Southern District of Mississippi Hattiesburg Division to hire and retain black educators despite repeated complaints from African American members in the community to do so. (Doc. 46-Ex 1).  Also, during Fairburn's tenure, Plaintiff witnessed the Lawrence County School Board repeatedly ratify or "rubber stamp" Fairburn's discriminatory and retaliatory actions launched against black teachers who were falsely accused of misconduct in order to encourage their resignations.  Id. When this method was unsuccessful, Plaintiff witnessed the district fire black teachers out right based on racially motivated charges that arose under Fairburn.  Id; Doc. 46-Ex 2.

On or about September 2015, Mr. Brookins (her husband) instituted a separate complaint to Lawrence County High School's Principal Daryl Turner and Superintendent Tammy Fairburn about the discriminatory practices of the LCSD.  Id.  Mr. Brookins informed that the district's

---

[1] Plaintiff incorporates by reference Mr. Brookins evidence which also has the exhibits to the hearing transcripts and Mr. Bridges affidavit.

hiring practices were discriminatory as was his concern as regards to the administration of punishment towards his African-American son.  Id.  No steps were taken by any member of LCSD to institute any changes.  Id.

Shortly thereafter, on or about October 2, 2015, Brookins was accused by three students with known disciplinary problems who conspired to make specious claims that Brookins had provided these students with a laptop containing obscene images.  Id.

Though the story had blatant inconsistencies, Fairburn who held ultimate policy making authority with respect to, *inter alia*, teacher discipline, along with her subordinates Twala Oakes, and Darryl Turner, collectively seized on the opportunity to lead another campaign of racial harassment, retaliation, and discrimination against this African American teacher who complained about the widespread discriminatory policies and practices within the district.  Id.  Fairburn, Oakes, and Turner knew or should have known the allegations were untrue when they were made and purposely avoided documenting exculpatory evidence in direct contrast to their approach with Caucasian educators accused of misconduct.  Id.

Specifically, on or about October 5, 2015, the Lawrence County School District (LCSD) placed Kenneth Brookins on paid administrative leave (HOR at 36) and suspended him on or about October 15th and 16th which led to a loss of benefits.  (41-2-27; Ex 1).  According to LCSD, Brookins was suspended for: 1) Failure to protect students from having access to obscene material in violation of Standard 4.2.6; 2) Violating the Internet Acceptable Use Policy for LCSD; and 3) Failure to properly supervise students during the school day, as well as verbal intimidation in violation of 4.1.3.  (Id. at 12-13).  Though he was not allowed to return to work until October 19, 2015 so that an investigation could be conducted during this time frame, no such investigation occurred. (41-2-(23-26; 29; Id).   This had the obvious effect of humiliating Brookins in the small community.  (Id; Ex 1).

<u>Defendants' Reaction and Bogus Charges Prior to Resignation</u>

With respect to failure to protect students from obscene material and violation of the internet policy by providing *personal* iPad access, the charges were baseless. (emphasis added). Fairburn admitted that she had no evidence regarding what was on the iPad (Vol VI at 86); the district had provided the iPad access so it was not a personal ipad as charged (Vol VI at 87)(Vol VI at 94-95); Oakes admitted no proof that the device was even internet capable or accessed despite the charge (Vol II at 95); and Fairburn admitted it was baseless and a waste of taxpayer money to have charged him for these violations without enough information to support it (Vol V at 72). Also, Principal Turner admitted they knew there was no obscene material on the ipad despite standing behind the suspension. (Doc. 41-2-29). Just as importantly, no student accused Mr. Brookins of any of the behavior found in that section which required an inappropriate written, verbal, electronic, physical or romantic relationship with the student. (Vol 2 at 105).

With respect to the charge of failure to supervise, this charge was baseless as well. The LCSD admitted a violation under Standard 1.2.5 required failure to provide appropriate supervision *and reasonable disciplinary actions* (emphasis added). (Vol 5 at 56-57). Fairburn admitted that her sole basis for the charge was based on the fact Brookins questioned students in the science lab though she admitted that she didn't t know when this occurred nor the duration (Vol V at 102 -103). More importantly, she admitted there was no evidence that supported her charge that Brookins violated this provision (Vol V at 58), and there was no precedent she could rely on from either the state or district that Brookins violated this provision (Vol 5 at 64) when he interviewed students in the science lab (Vol 5 at 52) regarding rumors of his misconduct. Id. at 75. Beyond her own admissions that there was no factual support or administrative guidelines

that supported her charge, the charged conflicted with the teacher's compliance with the district's directive that he protect the students from unnecessary embarrassment. (Vol V at 79; 81). Brookins also explained the obvious conflict based on the district's past practices. (Ex. 1). Although Fairburn admitted that her charges against Brookins were not grounded in policy, she tellingly admitted that she would receive rubberstamp support from the board anyway. (Vol 5 at 62).

With respect to the intimidation charge, Brookins allegedly violated Rule 4.2.6, and this too was belied by the district's own guidelines. Brookins was charged with punishment for intimidation under this provision and a separate provision although Brookins interviewed students in the admittedly same fashion as she and Turner (both Caucasians). (Vol 2 at 105). Neither of them were ever under investigation or leave, however. Id. In fact, once the district instructed Brookins not to question the students, she admitted there is no evidence that he did not comply. (Vol 2 at 115-116). Conversely, Caucasian teacher Williams allegedly pushed a student (Vol 2 at 150) according to a student and parents, but was never placed on leave even during the investigation nor was he charged with intimidation. Then there was Caucasian teacher McKinnon who had pending criminal charges for assaulting a student based on testimony from parent and teacher (Vol 2 at 157-160) but she was never placed on leave or suspended and the investigation was concluded in her favor even prior to the resolution of her criminal case. Reports were made against Caucasian teacher Sandifer who said to a student that he was acting like a "fucking kindergartener" and that she allowed students to watch the sexually explicit miniseries "Grey's Anatomy" in class. To date there has been no placement of this teacher on administrative leave or suspension. (Vol VI at 24). In sum, Fairburn admitted that several white teachers were accused of intimidation by parents and students, but none were ever charged. (Vol VI at 118). Yet Brookins, who was simply

attempting to get to the bottom of a rumor in admittedly the same fashion as his other LCSD personnel, was charged and suspended for intimidation.  This occurred although LCSD's administrator admitted that he was allowed to ask the very questions for which he was punished.  (Vol 2 at 117).  Just as troubling, there were no reports of physical contact, foul language, or even yelling by Brookins towards any student.

With respect to failure to report, Defendants engaged in a witch hunt and tried to invent a completely imagined duty to report not grounded in any rules.  But Fairburn justified Caucasian teacher Sandifer's failure to report screaming "fucking crybabies" at students by claiming that it was discretionary to report the information (Vol 5 at 134).  Just as importantly, Fairburn once again admitted there was no policy that required Brookins to report anything related to student rumors regarding inappropriate videos on a school authorized ipad against him.  (Vol 5 at 132-133).  Indeed, she admitted Brookins had pure discretion to report on this issue, id, and LCSD again admitted that the failing report rumors made against him were baseless.  (Vol 5 at 132).  Twalah Oakes , a LCSD administrator, initially admitted that the investigation against Brookins was designed to find punishment against Brookins (41-2-29; (Vol II at pg 20 line 10-14).

Additional Spark Plug and Retaliation

Ultimately, the campaign of harassment didn't end with the baseless charges as Brookins continued to engage in protected activity opposing the discriminatory practices of the LCSD. As a result, the district continued its campaign to quiet Brookins upon his return. When Brookins returned on October 19, he reiterated his concerns to Turner regarding the discriminatory practices of the district shortly thereafter.  (41-2-30-32). Subsequent to this conversation with Turner, Fairburn, Oakes, he reiterated the same concerns for community and his son and Turner

6

cornered Plaintiff.  Id; Ex 1.  In response, Oakes threw paper at him and the administrators postured with a "show of force." Id. at 32. Indeed, Fairburn told him that his entire professional career was in jeopardy unless he keep quiet.  According to Fairburn, "if you get back to the school and we don't hear anything out of you" "ill be nice to you" and if not, "you might not be able to get a teaching job.' (41-2-28).  But Fairburn wasn't done.  Subsequent to that meeting, Brookins claimed he was clearly threatened as Fairburn directed a subordinate to follow Brookins home, uninvited, to confiscate the ipad.  41-2-33.  It was the African-American administrator Collins who had to stop Quinn from following Brookins home. Id.

On or about January 2016, these same defendants turned an additional blind eye to the couple's complaints that their godson (who they were raising) who allegedly sat in a segregated classroom during Mrs. Green's (Caucasian teacher) instruction with "white kids in the front and…all the black kids in the back. " They too ignored that he was unfairly discriminated against with regards to punishment as compared to a Caucasian child who committed a more egregious offense ( Ex 1; 41-2-37). Based on district procedures, LCSD was on notice of these activities. Doc. 46-Ex 1.  After his minor was transferred to Caucasian teacher Sandifer, she allowed the class to watch sexually explicit content on a program called Grey's Anatomy.  During one episode, the doctors "were having a contest who could give the most blow jobs, if they could loose their virginity and stuff, just inappropriate stuff to be at school."  Brookins complained, again nothing happened. (41-2-38).  In fact, the Caucasian teacher violated FECRA and a code of ethics as she spread stories within the school about their godson whose parents were undergoing a divorce. Turner admitted to this but again did nothing.  Id.   Not stopping there, Mr. Brookins stopped receiving disciplinary support though it was necessary to do his job. (Ex. 1)  Brookins was also denied travel, refused access to his employee records, interrogated him about his legal representation, frequented with interruptions and embarrassment during his

instructional day, denied internet access, prevented from attending conferences, suffered undeterred student harassment, forced to pay out of pocket for expenses, and endured other forms of retaliation. (Ex. 1). Moreover, his suspension led to a loss of pay as he was forced to expend personal days. (Ex. 1). Around May 2016, Plaintiff, who was also an employee who reported under Fairburn and Oakes, was attacked by Oakes who ripped paper in Mrs. Brookins face and began screaming at her. (41-2-34)(Ex. 1). Based on the foregoing attempts to dissuade him from speaking out about discrimination, Mr. Brookins testified that he felt defenseless, "it was the only job", "I had two kids" and "they needed to eat." (41-2-34). Plaintiff also felt bullied Id, and she ultimately felt compelled to resign. Her husband had lost nearly forty pounds during the relevant period which included a work environment where his superintendent threatened his entire livelihood beyond working as a teacher at LCSD based on her ability to report a bogus charge involving indecency to a child to the State if he stepped out of line. (Ex. 1).

As mentioned, Defendants Fairburn, and her subordinate Oakes, also continued to harass Kawana Brookins following her questioning of Lawrence County's policy and procedures regarding unequal salary as her peers and lack of mandatory training for testing in August of 2015. Twyla Oakes harassed Kawana Brookins by refusing to respond to her inquiries which affected the terms and conditions of her employment and by refusing to train her as part of her official job duties. (Ex. 1). Around this same time, a member of the district threatened to follow the husband of Plaintiff home as part of the so-called investigation of Mr. Brookins and pursuant to Fairburn and Turner's directives which was also occupied by Mrs. Brookins. Despite having greater qualifications, the Plaintiff, who is an African-American, female, received lower pay than her white counterparts Rhonda Bayles and Daniel Hebert who were similarly situated and less qualified as her but she only had a 190 day terms as compared to her Caucausian

counterparts who were provided with a contractual minimum of 200 days.  (Ex. 1).    In fact, Fairburn had previously informed Plaintiff throughout Plaintiff's tenure, no more employees at the career center would receive a pay increase over the standard 190 day contract.   The superintendent also assigned the Plaintiff tasks that were previously assigned to two employees. Id.

On or about August 2015, Plaintiff attempted to express her concerns to Fairburn regarding unequal salary as her peers and lack of mandatory training for testing, which is required by the State of Mississippi.  After repeatedly asking for training and a salary increase, agents of the Lawrence County School District began to retaliate. Ex. 1.  The district began denying purchase orders that were necessary to adequately perform his job, and her requests for these resources were repeatedly ignored.  Id.

 On June 28, 2017, after the aforementioned acts, which included unchecked harassment against their godson, discrimination and retaliation against herself and her husband, Plaintiff was constructively discharged from her position and was replaced by a white female.  In short, the district caused these violations and were repeatedly deliberately indifferent to Brookins' adverse employment actions suffered based on Plaintiff's race.

Policymakers and the Board's Awareness

Notably, there were numerous other African-American teachers who were victimized by the district during Tammy Fairburn and her subordinate, Twalah Oakes' tenure.  (41-2-35-37); Doc 46-Ex 1; Ex 2).  The district was aware of the discriminatory practices of these individual defendants as it had received repeated complaints and notices from both members of the community, teachers, and its own board members.  Id. Despite this knowledge, the board took not activity to curb any of the discrimination and retaliation. Id.   In fact, the board delegated almost all the actions described in this suit to the superintendent (Vol VI pg 30), including the

administration of the school, discipline, scope of investigations, pay deductions, issuance of reprimands, negative reporting to the state, administrative leave, and allocation of funds. Id. Principal Turner had policy making authority concerning terms and conditions of employment including disciplinary support related to maintaining a classroom environment conducive to learning and the initiation of investigations. Id.  The board in practice ratified the conduct of Fairburn with respect to ultimate employment decisions as well, however. Id. In fact, Fairburn directed the board to sustain the suspension of Plaintiff after it initially resisted. Id. And there were also instances were Fairburn demonstrated final policy making authority with respect to firing African-American teachers.

<u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) requires that a court grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324, 106 S. Ct. 2548 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the  non- movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) *(en banc)*. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Rather, the evidence of the non-movant is to be believed

10

and all justifiable inferences are to be drawn in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "Although summary judgment is a useful device, it must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

<u>ARGUMENT</u>

A.  The Court should deny Defendants' attempt to dismiss Plaintiff's discrimination claim.

Defendants claim that Plaintiff's claim of discriminatory disparate pay should be dismissed based on the fact that Plaintiff's comparators had longer contracts, were assigned to different programs, and each had different hire dates.  In other words, they aren't similarly situated. Without question, Defendants' position should be rejected.

"To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc*., 554 F.3d 510, 522 (5th Cir. 2008).  With respect to the comparator element, the plaintiff "must show that his circumstances are nearly identical to those of a better paid employee who is not a member of the protected class."  Id. at 523.

In this case, Plaintiff is an African-American female who was paid less than Caucasian teachers for work requiring the same responsibility.  (Ex. 1). Both Daniel Hebert and Rhonda Bayles were Caucasian teachers who were supposed to perform nearly identical job duties for purposes of the contracts at issue. Id.  In fact, the Mississippi Department of Education defined the duties for both comparators and the Plaintiff as the same.  Id. But Plaintiff was the only teacher who had a less lucrative contract of less than 200 *paid* days. (Id).  In fact, Hebert was granted fifty more paid days than Plaintiff.  (Id).  And the length

11

of contract pay was not based on program title or the different programs nor was it based on hire dates. (Id).

Defendants attempted rebut the pay discrepancies based on nondiscriminatory reasons but again, the length of contract pay was not based on program title, different programs, nor the hired date.  (Id).  Just as telling, Plaintiff was initially assigned a contract less than 200 days and less than her Caucasian predecessors (Kay Stephens and Sue Carney) who worked in the Career services center, because Superintendent Tammy Fairburn claimed that no career services employees would receive a contract beyond 190 days. Id.  As Defendants own records reflect, this was untrue as the comparators were given longer and more lucrative contracts although there was no legitimate basis for the disparate treatment of Plaintiff.  Here, Plaintiff's complaint is based, in part, on the inexplicable deprivation of a contractual minimum of 200 paid days unlike her comparators not whether her pay should have been higher than her comparators.  As such, the distinctions upon which Defendants relied, are irrelevant to Plaintiff's claim and Defendants' motion should be denied as to this claim.

Plaintiff was also discriminated against with respect to training.  Defendants point to the fact that Plaintiff was allowed Starkville training. However, Plaintiff was refused her specific test coordinator training while her Caucasian peers were not denied such training.  Id. Also, the Starksville training differed from the district sponsored trainings that are mandated at the state level.  Id. There could be no legitimate explanation as to this disparate treatment as this training was mandated by the state and LCSD certified that the statewide test was administered in strict accordance with the requirements of Mississippi Statewide Assessment system.  Id.   More importantly, this training was necessary for her job function.  In.  In addition, Plaintiff was subject to state penalty, including jail time, based on LCSD's refusal to administer and setup testing for the new district and state level policies unlike her Caucasian counterparts.  Id. Not

only did Defendants refuse to train Plaintiff on August 9, 2015, even after Plaintiff provided notice of this issue, the district and Fairburn refused to do so prior to her resignation despite Plaintiff's ongoing request. Id. To be clear, the district discriminated against Plaintiff as it failed to provide training essential to Plaintiff's job function and subjected her to state penalties. And Plaintiff was constructively discharged based on the facts alleged as no reasonable employee would continue to subject herself to these penalties nor the environment that allowed for open discrimination and retaliation against herself, her husband, and her godson. (Id.)

B.  Plaintiff's Retaliation Claim Should Survive

The Court should reject Defendants' attempt to dismiss Plaintiff's Title VII retaliation claim.  To make out a claim for retaliation, Plaintiff must show that he: 1) engaged in a protected activity; 2) an adverse employment action followed; and 3) there was a causal connection between the activity and the adverse action.  *Aryain v. Wal-Mart Stores Texas LP*, 535 F.3d 473, 484 (5th Cir. 2008).  In this context, employee opposition to discriminatory practices directed against a fellow employee may constitute activity protected activity.  See *Jones v. Flagship Int'l*, 793 F.2d 714, 727 (5th Cir. 1986).

To establish an adverse action at the prima facie stage, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which…means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  See *Burlington* N. 548 U.S. 53, 68 (2006).  Such actions in the retaliation context can even include reprimands, see *Breaux v. City of Garlan*d, 205 F.3d 150, 157 (5th Cir. 2000); events that lead to a dimunition in prestige, see *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)); and decisions impacting an employee's leave, the denial of paid leave, the denial of an extension of unpaid leave, or the manner of how leave is taken all constitute an adverse action. See *Mota v. Univ. of Tex. Hous. Health Sci Ctr*., 261 F.3d

13

512, 521-23 (5th Cir. 2001).

Here, Plaintiff and her husband engaged in protected activity as the couple complained to Fairburn regarding her son's discriminatory treatment suffered at LCSD on multiple instances including or about December 2015, her husband complained to Fairburn on or about September 2015 regarding the district's discriminatory practices, Plaintiff complained about fair pay around this time,  Plaintiff's husband was also a participant of Rise, and the NAACP, civil rights organizations that were active in combatting discrimination at LCSD upon which Plaintiff also learned that Fairburn had been tracking individuals who participated in or commenting on the group's activities on or about January 2016. (Doc. 46). Beyond the aforementioned disparate pay issues, Plaintiff was subjected to adverse actions such as a failure to train as well as a failure to receive purchase orders necessary to complete her job by Fairburn which were necessary for her to perform her job duties after she engaged in these protected activities.  Ex. 1. Plaintiff was also harassed by Oakes who screamed in her face. (Id).  Based on the foregoing, Plaintiff was constructively discharged based on the facts alleged. (Id.).  Just as importantly, a reasonable jury could note the close temporal relationship between the protected activities of herself and her husband, as well as the district's response and find a causal connection between the couple's engagement in the aforementioned protected activities and her adverse actions as well as the district's apathetic response to Plaintiff's request to avoid the same.

Defendants close with an argument that "Plaintiff has not produced any evidence of retaliation by her supervisors as the result of an activity protected by Title VII…LCSD and Fairburn are entitled to qualified immunity."   Plaintiff did point to such evidence, thus Defendants motion should be denied on that basis alone.   In doing so, the district does not deny any of Plaintiff's allegations that Fairburn was a final policy maker with regard to the discriminatory, and retaliatory actions levied against Plaintiff and referenced in his Complaint.

(Ex. 1; Doc. 46-Ex 1; Ex 2).   Defendants also failed to dispute that the district ratified Defendants' conduct, were aware of the pervasive discriminatory conduct, were deliberately indifferent to the same, were provided repeated notices of lawsuits and complaints alleging discriminatory and retaliatory conduct, failed to take any actions to rectify these problems, and ratified such conduct. Id.  Just as importantly, Defendants conceded to Plaintiff's allegations that the board ratified, and acquiesced to the custom of discriminatory practices of Fairburn and Turner.[2]  In fact, the board was on notice of the issues listed in Plaintiff's affidavit and ratified Fairburn's actions despite her motives routinely.  Id.  As such, Defendant's motion should be denied. The law in the Circuit is clear in that racial discrimination, and retaliation for protected activity are violations of clearly established constitutional rights.  Based on the record evidence, a reasonable jury could find that Defendants' actions were both objectively unreasonable and in violation of clearly established constitutional rights; thus Defendants' motion should be denied.

C.  Plaintiff's Section 1981 Claim Should Survive

The analysis for Title VII and Section 1981 are the same for discrimination claims and Plaintiff relies on the same arguments.

Respectfully submitted this the 19th day of February, 2019.

/s/ Volney Brand
Volney Brand (TX Bar 24073253)
Brand Law PLLC
3626 N Hall Ste 610
Dallas, TX 75219
Telephone: 214-932-1472
Fax: 214-932-1473

15