# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**KAWANA BROOKINS**                                                                                    **PLAINTIFF**

**v.**                                                                      **CIVIL ACTION NO. 2:17-CV-172-KS-MTP**

**LAWRENCE COUNTY SCHOOL**
**DISTRICT, _et al._**                                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** Defendants' Motion to Exclude Undisclosed Evidence [34], **grants** Defendants' Motion to Strike [38], and **grants** Defendants' Motion for Summary Judgment [27]. The Court will enter a separate final judgment in accordance with Rule 58.

## I. BACKGROUND

The Court discussed the background of this case in a previous opinion. _Brookins v. Lawrence Cnty. Sch. Dist._, No. 2:17-CV-172-KS-MTP, 2018 WL 1702932, at *1 (S.D. Miss. Apr. 6, 2018). Plaintiff was a teacher in the Lawrence County School District. She alleges that the District paid her less than her white counterparts, and that the District's administrators retaliated against her when she complained about it. She asserted claims of racial discrimination and retaliation under Title VII, and a claim of racial discrimination under 42 U.S.C. §§ 1981 and 1983. Defendant filed a Motion for Summary Judgment [27], which the Court now addresses.

## II. MOTION TO EXCLUDE UNDISCLOSED EVIDENCE [34]

In response to Defendants' Motion for Summary Judgment [27], Plaintiff only submitted her own affidavit. *See* Exhibit 1 to Response, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-172-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 31-1. She "incorporate[d] by reference" all the evidence her husband submitted in a separate case. Response at 2, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-172-KS-MTP (S.D. Miss. Feb. 19, 2019), ECF No. 31. Defendants argue that the Court should exclude the evidence incorporated by reference – Mr. Brookins' affidavit, the Bridges affidavit, and the multi-volume transcript of Mr. Brookins' administrative hearing – because it was not produced or identified in this case, and Plaintiff did not attach it as an exhibit to her response. In response, Plaintiff argues that Defendants were not prejudiced because they received the evidence in a separate, related case.

Regardless of whether Defendants received the documents in a related case, Plaintiff was still required to formally produce them in this case and provide notice to Defendants that she intended to rely on them to support her claims. Rule 26 provides that "a party must, without awaiting a discovery request, provide to the other parties . . . a copy – or a description by category and location – of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims . . . ." FED. R. CIV. P. 26(a)(1)(A). "[E]ven if a document is publicly available or in the opposing party's possession, a party must still disclose it under Rule 26(a)(1)(A) to provide notice of evidence central to its claims or defenses."

*Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015). Therefore, it is undisputed that Plaintiff did not comply with Rule 26(a)(1).

Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). When determining whether to exclude evidence for a party's failure to properly produce it, the Court considers the following factors: (1) the non-movant's explanation for the failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to the movant in allowing the evidence, and (4) the availability of a continuance to cure the prejudice. *CQ, Inc. v. TXU Min. Co.*, 565 F.3d 268, 279 (5th Cir. 2009). "In fashioning any such sanction, the district court should impose only that sanction which is the least severe way to effect compliance with the court's discovery orders." *United States v. Garza*, 448 F.3d 294, 299-300 (5th Cir. 2006).

Plaintiff has not provided a good reason for her failure to make the required disclosure. Even if the documents were produced in a related case, Plaintiff was still required to disclose them so that Defendants would know that she intended to rely on them. Although Plaintiff's husband produced the documents in a separate case, Defendants received no notice that Plaintiff intended to rely on the documents in *this* case. In that respect, Defendants were still slightly prejudiced despite their possession of the documents and knowledge of their contents. The discovery period is

closed, dispositive motions have been filed, and the case is ready for a final pretrial conference and trial. Accordingly, there is no time for a continuance to cure the slight prejudice.

Finally, the Court finds that the documents' importance is questionable because the evidence in Mr. Brookins' case focused on events related to *his* employment, rather than Plaintiff's. Mr. Brookins referred to Plaintiff's case, but he failed to lay a foundation for his own personal knowledge of the events underlying her claims. The Court declines to sift line-by-line through several hundred pages of disputed documents to assess their importance or admissibility. In the absence of more specific arguments from Plaintiff regarding the importance of the exhibits, the Court will rely on its general recollection that the documents contained little, if anything, of substantial value to Plaintiff's case.

For these reasons, the Court concludes that Plaintiff has not demonstrated that her failure to provide notice that she intended to rely on Mr. Brookins' affidavit, the Bridges affidavit, and the multi-volume transcript of Mr. Brookins' administrative hearing was substantially justified or harmless. The Court grants Defendants' Motion to Exclude [34] those documents from consideration.

### III. MOTION TO STRIKE [38]

On January 22, 2019, Defendants filed their Motion for Summary Judgment [27]. Plaintiff responded [31] to the motion on February 19, 2019. Defendants filed a reply [33] on March 8, 2019, completing briefing on the Motion for Summary

Judgment [27].

On the same day, Defendants filed a Motion to Exclude Undisclosed Evidence [34]. On March 22, 2019, Plaintiff filed an unauthorized sur-reply [36] to Defendants' Motion for Summary Judgment [27] and response to Defendants' Motion to Exclude Undisclosed Evidence [34]. Defendants moved to strike [38] the sur-reply.

This Court's local rules do not permit the unauthorized filing of sur-replies. *See* L.U.Civ.R. 7(b). As another district court in this Circuit has noted: "Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Larcher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). Moreover, they are "usually not that helpful in resolving pending matters . . . ." *Id.* Accordingly, this Court does not consider sur-replies filed without leave. *See, e.g. Bolton v. Freeze*, 2018 WL 4232231, at *1 (S.D. Miss. June 26, 2018); *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg*, 2014 WL 1653108, at *2 n. 3 (S.D. Miss. Apr. 23, 2014). Therefore, the Court grants Defendants' Motion to Strike [38] Plaintiff's unauthorized surreply. The Court will not consider the document insofar as it constitutes a surreply to Defendants' Motion for Summary Judgment [27].

## IV. MOTION FOR SUMMARY JUDGMENT [27]

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club,*

*Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A.    *Individual Capacity Claims – §§ 1981, 1983*

First, Defendant Fairburn argues that she is entitled to qualified immunity from liability as to the claims made against her in her individual capacity for racial discrimination under 42 U.S.C. §§ 1981 and 1983. The Court follows a two-step

analysis when evaluating a qualified immunity defense. "First, we must determine whether the plaintiff has made a sufficient showing that the official violated a clearly established constitutional or statutory right. If the answer is in the affirmative, we then ask whether the official's actions were objectively reasonable in light of the clearly established right." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003).

Fairburn contends that Plaintiff cannot prove the violation of a constitutional right. Claim of racial discrimination in employment under Sections 1981 and 1983 are analyzed under the same framework as those asserted under Title VII. *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007). Therefore, for the same reasons provided below in the Court's discussion of Plaintiff's Title VII discrimination claims, the Court grants Defendants' motion with respect to Plaintiff's discrimination claims against Defendant Fairburn in her individual capacity under 42 U.S.C. §§ 1981 and 1983.

## B.   *Official Capacity Claims – § 1983*

Next, Defendants argue that the District cannot be liable under Section 1983 because Plaintiff has no evidence that an official policy, practice, or custom was the moving force behind any alleged constitutional violation. The Fifth Circuit has provided the following summary of the law concerning municipal liability under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through

some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.

Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.

Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.

A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

Plaintiff did not directly address municipal liability, but her briefing includes various statements that could be construed as relevant to the issue. Plaintiff apparently argues that the District ratified Defendant Fairburn's alleged actions, and that the District delegated policymaking authority to Fairburn.

## 1. Ratification

If an authorized policymaking body approves "a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009). But Fifth Circuit "precedent has limited the theory of ratification to 'extreme factual situations.'" *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). Without evidence that the policymaking body knew of and ratified the subordinate's improper motive, the actions in dispute must be so egregious that a policymaking body could not approve them without also approving the unconstitutional nature of the actions. *Cf. Coons v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (subordinates' illegal behavior is not assumed to have resulted from official policy where a policymaker defends his subordinates). The facts in this case do not present the sort of "extreme factual situation" in which the Fifth Circuit has applied the theory of ratification.[1]

## 2. Delegation

Plaintiff also contends that the District delegated its policymaking authority to Defendant Fairburn, making it liable for her actions as a final policymaker. "When a municipality's final policy and decision maker in a single action directly and

---

[1] *See Peterson*, 588 F.3d at (ratification did not apply where officers used excessive force by slamming arrestee against truck, kneeing him in the thigh); *Snyder*, 142 F.3d at 798 (ratification didn't apply where officer shot a fleeing suspect in the back); *Coons*, 780 F.2d at 1161 (ratification did not apply to officer-involved shooting where officers' actions were not "manifestly indefensible"); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (ratification applied when officers "poured" gunfire onto a truck, killing an innocent person).

intentionally deprives a person of a federal constitutional right, . . . the person need not show that a policy or custom caused his injury in order to recover. In such a case, the municipality's action is deemed to be the direct cause or moving force behind the deprivation of right and injury." *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 333 (5th Cir. 2002) (citing *Bd. of County Comm'ners v. Brown*, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "To prove liability under the single-incident exception, a plaintiff must at least show (1) that the defendant acted with deliberate indifference by disregarding a known or obvious consequence of his action and (2) that there is a direct causal link between the defendant's action and the deprivation of federal rights." *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). Therefore, a single action by one who establishes governmental policy is sufficient to impose municipal liability in certain circumstances. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1997)). Moreover, a municipal body can delegate its policymaking authority to a public official, whose actions can then expose the municipality to liability. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995); *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 377 (5th Cir. 2017).

But "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before

the municipality can be held liable." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001). "[D]iscretion alone is not enough; the official must also create policy." *Id.* The determination of whether an official possesses final policymaking authority is a matter of state law. *Id.* The Court should consider whether state law grants final policymaking authority to the public official, and whether his authority is reviewable by any other public body. *Id.* at 602-03.

Plaintiff baldly asserted, without any substantial argument or citation to law or evidence, that Fairburn is "a final policy maker with regard to the discriminatory, and retaliatory actions levied against Plaintiff . . . ." Response [31], at 14. This is insufficient to avoid summary judgment. The Court is not obligated to search the record for evidence to support Plaintiff's claims. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir. 1992). Therefore, Plaintiff has failed to demonstrate that the District delegated its authority to Defendant Fairburn.

For these reasons, the Court grants Defendants' motion with respect to Plaintiff's Section 1983 claims against the District and against Defendant Fairburn in her official capacity.

## C.    *Title VII Discrimination*

Defendants argue that Plaintiff does not have sufficient evidence to support her Title VII discrimination claims. Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "When a defendant has moved for summary judgment on an employment discrimination claim based on circumstantial evidence, as in this case, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012).

Plaintiff has the initial burden to establish a *prima facie* case of discrimination. *Id.* "To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. UPS, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). Also, "[a]n individual plaintiff claiming disparate treatment in pay under Title VII must show that his circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* at 523. "In making this determination, a variety of factors are considered, including job responsibilities, experience, and qualifications." *Mitchell v. Mills*, 895 F.3d 365, 371 (5th Cir. 2018).

If Plaintiff presents evidence establishing a *prima facie* case of retaliation, "discrimination is presumed," and the burden shifts to the District to articulate a legitimate, nondiscriminatory reason for its actions. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

If the District can articulate a legitimate, nondiscriminatory reason for the underlying employment action, the presumption of discrimination disappears, and Plaintiff "must then offer sufficient evidence to create a genuine issue of material fact either (1) that [Defendant's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [Defendant's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Plaintiff's] protected characteristic (mixed-motives alternative)." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

### 1. *Similarly Situated Comparators*

First, Defendants argue that Plaintiff has no evidence that others similarly situated to her were paid more. In response, Plaintiff identified Daniel Hebert and Rhonda Bayles as white teachers "who were supposed to perform nearly identical job duties for purposes of the contracts at issue." Response [31], at 11. In support of this argument, Plaintiff cites her own affidavit. She stated:

> Both Daniel Hebert and Rhonda Bayles were Caucasian teachers who were supposed to perform nearly identical job duties . . . . In fact, the Mississippi Department of Education defined the duties for Hebert, Bayles, and myself as the same. But I was the only teacher who had a less lucrative contract of less than 200 paid days. In fact, Hebert was granted fifty extra paid days. And the length of the contract pay was not based on program title or the different programs.

Exhibit 1 [31-1], at 4.

However, Defendant correctly notes that Plaintiff failed to provide any factual basis for her conclusory assertion that she had "nearly identical job duties" to Hebert

and Bayles. Likewise, Plaintiff failed to lay a foundation for her personal knowledge of their job duties, the Mississippi Department of Education's job definitions, or her conclusory testimony as to how employee's salaries were determined.

In contrast, Defendant provided evidence that neither Hebert nor Bayles were similarly situated to Plaintiff. First, both comparators had more years of experience than Plaintiff. Bayles had thirty-two years of experience, Hebert had fifteen years, and Plaintiff had twelve years. *Compare* Exhibits A, B, C, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-172-KS-MTP (S.D. Miss. Jan. 22, 2019), ECF Nos. 27-1, 27-2, 27-3. Hebert and Bayles were also assigned to different programs than Plaintiff. Plaintiff worked in Student Services. Hebert worked in Agriculture and Natural Resources, and Bayles worked in the Teacher Academy. Finally, Hebert's base salary was comparable to Plaintiff's, but he received an extended contract through a grant from the Mississippi Department of Education that was not transferable to other teachers or programs. Exhibit C [27-3], at 2.

Plaintiff also cited Kay Stephens and Sue Carney as white predecessors in her position that received longer, and therefore higher-paying, contracts. Exhibit 1 [31-1] at 3-4. However, once again, Plaintiff failed to lay a foundation for her personal knowledge of their compensation. Also, Plaintiff did not present any evidence that Stephens and Carney were similarly situated with her in terms of experience, education, tenure, and other factors.

In summary, it is not Defendants' burden to prove that Hebert and Bayles were

dissimilar to Plaintiff. Rather, Plaintiff has the burden of proving that they were similarly situated to her. She has not come close to carrying that burden. Her testimony is rife with broad, conclusory assertions without any supporting factual basis. Likewise, she failed to lay a proper foundation for most of her affidavit testimony and establish that she has personal knowledge of the matters to which she testified. The Court grants Defendants' motion with respect to Plaintiff's Title VII discrimination claim arising from disparate compensation.

2. *Training*

Next, Defendants argue that Plaintiff has not identified any training that she should have received but was denied. In response, Plaintiff submitted her own affidavit testimony that on August 19, 2015, Defendants did not provide her with "mandatory training for testing that is required by the State of Mississippi." *Id.* at 1. She claims that the training was "necessary for [her] job function," and that she was forced to administer tests without training in violation of Mississippi law, while Defendants "only trained the white test coordinators." *Id.* at 1-2.

Plaintiff has not demonstrated that she was denied any required training. She contends that Defendants caused her to violate MISS. CODE ANN. § 37-16-1 by administering tests without required training, exposing her to potential criminal liability. But the statute does not impose any criminal liability. Moreover, it does not require any District employee to receive any form of training. Rather, it merely provides the primary purpose of the statewide testing program. Therefore, Plaintiff

has not provided any evidence that Defendants denied her any required training, beyond her own unsupported, conclusory declaration.

Regardless, the Fifth Circuit has held that an employer's "failure to train does not constitute an ultimate employment decision or adverse employment action" where the denial of training effects only a "potential, tangential effect on increased compensation." *Brooks v. Firestone Polymers, LLC*, 640 F. App'x 393, 396 (5th Cir. 2016); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999); *Hollimon v. Potter*, 365 F. App'x 546, 549 (5th Cir. 2010). Plaintiff has not submitted any evidence that the alleged denial of training had any effect on her compensation or other terms of employment. Therefore, it does not constitute an ultimate employment decision for purposes of a racial discrimination claim under Title VII.

### 3. *Purchase Orders*

Finally, Defendants argue that Plaintiff has no evidence that they rejected Plaintiff's purchase orders, or that such alleged rejection was racially motivated. Plaintiff did not address this issue in briefing her Title VII discrimination claim. Therefore, she failed to direct the Court to any evidence creating a genuine dispute of material fact on the issue, and the Court is not obligated to search the record for evidence supporting Plaintiff's claims. *Skotak*, 953 F.2d at 915 n. 7.

For these reasons, the Court grants Defendants' motion with respect to Plaintiff's Title VII discrimination claims.

### D.    *Title VII Retaliation*

Defendants argue that Plaintiff has insufficient evidence to support her claim of retaliation under Title VII. "Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a complaint of discrimination." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). The *McDonnell Douglas* burden-shifting framework applies. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). To make out a *prima face* case of retaliation under Title VII, Plaintiff must prove that "(1) she engaged in activity protected under Title VII, (2) an adverse employment action occurred, and (3) there was a causal connection between her protected activity and the adverse employment decision." *Gardner v. CLC of Pascagoula, LLC*, 915 F.3d 320, 327-28 (5th Cir. 2019).

First, Defendant argues that Plaintiff has no evidence that she engaged in protected activity. In this context, "protected activity" is "oppos[ing] any practice made an unlawful employment practice" by Title VII or "ma[king] a charge, testif[ying], assist[ing] or participat[ing] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The first option "is known as the 'opposition clause;' the second as the 'participation clause.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016).

Plaintiff presented evidence that she "attempted to express [her] concerns to Fairburn" concerning her compensation and lack of training in August 2015. Exhibit 1 [31-1], at 2. Plaintiff also testified via affidavit that she complained about alleged

17

discrimination against her son during the 2015-2016 school year, and that the school's principal, Turner, was aware of the complaints. *Id.* at 3. Finally, it is undisputed that Plaintiff filed a charge of discrimination with the EEOC during the 2016-2017 school year. *See* Exhibit A to Complaint, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-172-KS-MTP (S.D. Miss. Oct. 16, 2017), ECF No. 1-2. This evidence creates a genuine dispute of material fact as to whether she engaged in protected activity.

Next, Defendants argue that Plaintiff can not prove that she suffered an adverse employment decision. To demonstrate an adverse employment decision for purposes of a Title VII retaliation claim, a plaintiff must demonstrate that she was subjected to "an employment decision that was 'materially adverse,' which means that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Johnson v. Halstead*, 916 F.3d 410, 419-20 (5th Cir. 2019). Plaintiff argues that Defendants subjected her to the following adverse employment decisions: 1) failing to train her; 2) failing to process her purchase orders; 3) a District administrator, Twyla Oakes, allegedly screamed in Plaintiff's face; and 4) Plaintiff's constructive discharge. The Court will assume for the purpose of addressing Plaintiff's motion that these qualify as adverse employment decisions for a Title VII retaliation claim.

Defendants argue that Plaintiff can not prove that a causal connection exists between her protected activity and an adverse employment decision. "To establish

the requisite causal connection between the protected activity and the adverse employment action, a plaintiff must show that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017). In other words, the plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). "[T]emporal proximity alone is insufficient to prove but-for causation." *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007). "But the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (citing *Shackelford*, 190 F.3d at 409).

Plaintiff contends that the close temporal relationship between her protected activity and the alleged adverse employment decisions is enough to prove causation. However, temporal proximity, without more, is not enough to prove causation for a Title VII retaliation claim. *Strong*, 482 F.3d at 808. There must be some "other significant evidence of pretext" in addition to the temporal proximity. *Solvay Pharms.*, 871 F.3d at 334. Unlike her husband,[2] Plaintiff has presented no such additional evidence. Therefore, she can not satisfy the third element of a retaliation claim. Accordingly, the Court grants Defendants' motion with respect to Plaintiff's

---

[2] *See* Memorandum Opinion and Order at 18, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-60-KS-MTP (S.D. Miss. May 13, 2019), ECF No. 65.

Title VII retaliation claim.

## E.    *Constructive Discharge*

Next, Defendants argue that Plaintiff cannot prove the elements of a constructive discharge. Constructive discharge "is not itself a cause of action." *Wells v. City of Alexandria*, 2004 WL 909735, at *3 (5th Cir. Apr. 29, 2004). Rather, "[i]t is a means of proving the element of an adverse employment action where the employee quits instead of being fired." *Id.* Because the Court has already granted summary judgment in Defendants' favor as to Plaintiff's claims of discrimination and retaliation for the reasons provided above, it need not address the issue of constructive discharge.

Regardless, to establish a constructive discharge, Plaintiff "must prove that working conditions would have been so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign." *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 439-40 (5th Cir. 2005). To determine whether a reasonable employee would feel compelled to resign, the Court considers the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status . . . .

*Id.* at 440 (punctuation omitted). "Discrimination alone, without aggravating factors, in insufficient for a claim of constructive discharge." *Id.* Rather, Plaintiff must

"demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Id.*

Plaintiff has not directed the Court to evidence of working conditions "so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign." *Id.* at 439-40. She claims that Defendants failed to provide her with required training, but she failed to provide any evidence to support the accusation, as explained above. She also claims that Defendants failed to process her purchase orders, but – once again – she failed to present any evidence to that effect.

The only specific allegation of harassment addressed in Plaintiff's briefing is that a District employee, Twyla Oakes, "ripped paper in [her] face and began screaming at [her]." Exhibit 1 [31-1], at 2. During her deposition, Plaintiff provided no additional relevant details. She only testified that Twyla Oakes "gave [her] blank paperwork to complete, and then when the blank paperwork was completed, she looked and she saw one error, and she ripped . . . the entire stack in my face." Exhibit D to Reply at 3, *Brookins v. Lawrence Cnty. Sch. Dist.*, No. 2:17-CV-172-KS-MTP (S.D. Miss. Mar. 8, 2019), ECF No. 33-1. This event is not enough to create working conditions so adverse that an objectively reasonable employee would feel compelled to resign. At worst, it falls "into the category of petty slights, minor annoyances, and simple lack of good manners that employees regularly encounter in the workplace." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008).

In summary, Plaintiff has provided little specific evidence of workplace

harassment or other adverse working conditions to support a claim of constructive discharge. Therefore, to whatever extent Plaintiff intended for a constructive discharge to constitute the adverse employment action underlying her claims of discrimination and retaliation, she has not provided sufficient evidence to support the claim. The Court grants Defendants' motion with respect to any claim of constructive discharge.

## F.    *Hostile Work Environment*

Next, Defendants argue that Plaintiff does not have sufficient evidence to prove that she was subjected to a hostile work environment. To establish a hostile work environment, Plaintiff must prove that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Williams-Boldware v. Denton County, Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Johnson*, 916 F.3d at 417.

"In assessing whether a claim meets that standard, courts review all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or it is a mere offensive utterance, and

whether it unreasonably interferes with the employee's work performance." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012). "Incidental or occasional [race]-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment." *Id.*; *see also Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 445 (5th Cir. 2017).

Plaintiff did not address this issue in briefing. Therefore, she failed to direct the Court to evidence of harassment severe of pervasive enough to alter the terms of her employment. Likewise, she failed to direct the Court to evidence that such alleged harassment was based on race. The Court is not obligated to search the record for evidence supporting Plaintiff's claims. *Skotak*, 953 F.2d at 915 n. 7. Accordingly, the Court grants Defendants' motion as to Plaintiff's claims of hostile work environment.

### G.  *§ 1981 Discrimination*

The Court analyzes claims of intentional racial discrimination under Title VII and Section 1981 "under the same rubric of analysis." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Therefore, the Court grants Defendants' motion as to Plaintiff's Section 1981 discrimination claim for the same reasons provided in its discussion of Plaintiff's Title VII discrimination claim.

### V. CONCLUSION

For these reasons, the Court **grants** Defendants' Motion to Exclude Undisclosed Evidence [34], **grants** Defendants' Motion to Strike [38], and **grants**

23

Defendants' Motion for Summary Judgment [27]. The Court will enter a separate final judgment in accordance with Rule 58.

SO ORDERED AND ADJUDGED this 31st day of May, 2019.

_____/s/_____Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE